UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 32BJ**, <br><br> Petitioner, <br><br> v. <br><br> **PREEMINENT PROTECTIVE SERVICES, INC.**, <br><br> Respondent. | Case No. 1:17-cv-01679 (TNM) |

## MEMORANDUM OPINION

The Service Employees International Union Local 32BJ (the "Union") petitions this Court for an order compelling Preeminent Protective Services, Inc. ("Preeminent") to arbitrate employment disputes for two members of the Union. Pet. to Compel Arbitration ("Pet.") ¶¶ 25-29, ECF No. 1. Preeminent seeks to dismiss the petition, arguing that the Court lacks subject matter jurisdiction and that the Union failed to state a claim because the two Union members were not Preeminent employees. Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") 5-7, ECF No. 5. The Union filed a cross-motion for summary judgment disputing Preeminent's contention that it did not employ the officers. Mem. of Law in Opp. to Resp't's Mot. to Dismiss and in Supp. of Cross-Mot. to Compel Arbitration ("Opp. to Mot. to Dismiss") 11-15, ECF No. 7. Upon consideration of the pleadings, relevant law, and related legal memoranda in opposition and in support, I find that the Federal Arbitration Act and the Labor Management Relations Act confers this Court with subject matter jurisdiction and that the matter is appropriate for arbitration. Accordingly, Preeminent's motion to dismiss will be denied and the Union's motion for summary judgment and to compel arbitration will be granted.

## I. Background

The Union represents over 16,000 property-service workers in the Washington, D.C. area, including Security Officers Crystal Middleton and Renay Campbell. Pet. ¶¶ 1, 7. Both officers worked at the Congress Heights Service Center, a D.C. public site covered by a Collective Bargaining Agreement ("CBA") between the Union and Preeminent. *Id.* ¶¶ 5-7. Before February 2017, Business Resource and Security Services USA, Inc. ("BRSS") was the subcontractor that provided security officers to the Congress Heights Service Center and employed Officers Middleton and Campbell. *Id.* ¶ 7. In February 2017, Preeminent took over the subcontract from BRSS, including providing security officers to the Congress Heights Service Center. *Id.* ¶ 9.

The Union claims that under the CBA, Preeminent was required to hire the BRSS officers, including Officers Middleton and Campbell. *Id.* ¶ 10; *see also id.* Ex. 1 Art. 9 ("When taking over or acquiring an account or location covered by a collective bargaining agreement with the Union in Washington, DC or Maryland or Virginia, the Employer will offer employment to and hire incumbent employees who have been employed at the account or location for at least six (6) months and who accept the offer of employment"). The Union claims that Preeminent recognized its obligation and began treating Officers Middleton and Campbell as employees, including having them complete and sign employment documents, referring to the officers as "transfers" from BRSS, and paying their wages from February 1, 2017 forward. *Id.* ¶ 12. Preeminent does not dispute that it disbursed payroll starting on February 1, 2017, but claims that the money for that particular disbursement was provided by the prime contractor, and that it did not take over the subcontract until February 10, 2017. Mot. to Dismiss ¶¶ 4-5.

Preeminent claims that it never employed Officers Middleton or Campbell because its client, the District of Columbia, requested on February 8, 2017—two days prior to Preeminent taking over the subcontract—that the officers be removed from the Congress Heights Service Center. *Id.* ¶ 6. In Preeminent's view, because the officers were dismissed by BRSS on February 8, 2017, Preeminent was contractually barred from hiring the officers. *Id.* ¶ 7; *see also* Contract No. DCAM-12-NC-0031 City-Wide Security Services § C.19.2, ECF No. 5-2 ("In situations deemed appropriate by the [Contracting Officer's Technical Representative], the COTR, in his or her sole discretion, may summarily direct the Contractor to remove its employee from a facility and the Contractor shall remove such employee immediately and supply a replacement with no lapse in coverage."); *id.* § C.19.4 ("The Contractor shall be required to dismiss such employees within a timeframe ranging from 'immediately' to 'within a week,' as specified by the COTR. Any employee so dismissed shall at no time be eligible to work under this contract."). The Union disagrees, citing a provision of the CBA that provides that, unless the employee is discharged for cause, "the Employer will place the employee in a job at another account or location covered by this Agreement." Pet. ¶ 14; *id.* Ex. 1 Art. 7.3. Because the Union believed that Officers Middleton and Campbell were obligated to be hired by Preeminent, were Preeminent employees, and were not placed at another site, it filed grievances with Preeminent on behalf of both officers. *Id.* ¶¶ 10, 12, 15; *see also id.* Ex. 1 Art. 23 (setting forth grievance and arbitration procedures for "[a]ll disputes or differences involving the interpretation or application of this Agreement that arise between the Union and the Employer").

The Grievance Initiation Letters, both filed on February 13, 2017, allege that the officers were "unjustly discharged effective 2/10/2017." Mot. to Dismiss Exs. 5-6, ECF Nos. 5-6, 5-7. Between February and April 2017, the Union and Preeminent exchanged several

communications about the dispute, but the Union alleges that Preeminent never challenged whether the dispute was arbitrable.  *See* Pet. ¶¶ 19-23.  On August 4, 2017, the parties appeared before an arbitrator, and Preeminent contended that the arbitrator lacked jurisdiction over the proceeding because the officers were not Preeminent employees.  The arbitrator discontinued the proceeding because of his view that "there is a question of whether there exists jurisdiction over Preeminent as the Employer in this dispute under the Parties' Collective Bargaining Agreement which should be resolved in court."  Mot. to Dismiss Ex. 10, ECF No. 5-11.  The Union then filed its petition in this Court.

## II.     Legal Standards

### A.  Subject Matter Jurisdiction

Subject matter jurisdiction concerns a court's power to hear a claim.  *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003).  The plaintiff bears the burden of proof to establish that the court has subject matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  A court may look beyond the complaint to consider "undisputed facts evidenced on the record" to satisfy itself that it has subject matter jurisdiction.  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

### B.  Failure to State a Claim

A party may move to dismiss a complaint because it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it merely offers "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 546). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The Court does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### C. Summary Judgment

A motion to compel arbitration is analyzed using the summary judgment framework of Federal Rule of Civil Procedure 56. *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). To prevail on summary judgment, the movant must show that there is "an enforceable agreement to arbitrate," after which the non-movant must "raise a genuine issue of material fact as to the making of the agreement." *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 89 (D.D.C. 2012) (internal quotation marks omitted). Summary judgment should be granted if there is "no genuine issue of fact concerning the formation of the agreement to arbitrate." *Id.* (internal quotation marks omitted). In determining whether a fact is material or an issue is genuine, the Court uses the familiar Rule 56 framework. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (explaining a material fact as one capable of affecting the substantive outcome of the litigation and a genuine issue as one where a reasonable jury could find for the non-moving party). The Court views the evidence in the light most favorable to the non-moving party. *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

5

**III. Analysis**

Preeminent's two challenges to the petition are to the Court's subject matter jurisdiction over the matter and to the Union's failure to state a claim because it alleges that BRSS, and not Preeminent, terminated the employees. Mot. to Dismiss 5-7. Each is discussed in turn.

**A. The Court Has Subject Matter Jurisdiction Under the Federal Arbitration Act and Labor Management Relations Act**

The Union brings this petition under the Federal Arbitration Act and/or the Labor Management Relations Act. Pet. ¶ 29. The Federal Arbitration Act allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. As Preeminent points out, this text has been interpreted to not confer jurisdiction on district courts, but permitting a district court to issue an order compelling arbitration only when there is "diversity of citizenship or some other independent basis for federal jurisdiction." Mot. to Dismiss 5 (citing *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245-46 (D.C. Cir. 1999)).

The Labor Management Relations Act, on the other hand, grants federal courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter." 29 U.S.C. § 185. It is undisputed that the CBA is a valid and enforceable contract between the Union and Preeminent. *See* Mot. to Dismiss 6 (citing the CBA). The Union's petition seeks to redress alleged violations of that contract, Pet. ¶¶ 27-28, and the Union is undoubtedly a labor

6

organization affecting commerce. *See* 29 U.S.C. § 142 (defining "industry affecting commerce" as "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."). Subject matter jurisdiction over this petition exists based on federal question jurisdiction. *See* 28 U.S.C. § 1331; *see also District No. 1, Pac. Coast Dist., Marine Eng'r's Benficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 70 F. Supp. 3d 327, 331 (D.D.C. 2014) (finding that the court had, under 29 U.S.C. § 185, subject matter jurisdiction over a petition seeking an order to compel arbitration). Thus, I have subject matter jurisdiction under both Acts.

**B. The Petitioner's Grievances Should Be Decided by the Arbitrator**

The Federal Arbitration Act and the Labor Management Relations Act intersect in at least one other meaningful way. Federal courts may "fashion rules of federal common law" under the Labor Management Relations Act and may look to the Federal Arbitration Act "for guidance in labor arbitration cases." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987); *see also Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 52 F.3d 359, 362 (D.C. Cir. 1995). This body of case law reveals a few bedrock principles that guide the resolution of the parties' motions. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Second, whether a CBA requires the parties "to arbitrate the particular grievance-is undeniably an issue for judicial determination." *Id.* at 649 (punctuation in original).[1] Third, the arbitrator, and not the court, is

---

[1] For example, questions for courts to resolve include whether an arbitration provision bound a surviving corporation post-merger, *id.*, whether arbitration was proper where a CBA had expired, *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 209 (1991),

7

the proper party to "rule on the potential merits of the underlying claims." *AT&T Tech.*, 475 U.S. at 649. Fourth, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 650 (internal quotation marks and punctuation omitted). The Court has also noted that "[s]uch a presumption is particularly applicable where the clause is [] broad." *Id.*

In this case, Preeminent's and the Union's quarrel is not about whether the parties entered into a valid, enforceable contract, or whether the arbitration clause in the contract applies to the parties. Instead, Preeminent raises a threshold question of whether the officers were Preeminent employees, and posits that they were not because they were dismissed by BRSS, making the Union's claim against Preeminent untenable. Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") 3, ECF No. 10. The Union maintains that the officers were not dismissed by BRSS and that they were therefore Preeminent employees who were wrongly discharged by Preeminent. Pet.'s Statement of Material Facts Not in Dispute and Resp. to Respt's Statement of Material Facts ("Pet.'s SOMF") 8-9, ECF No. 7. Analysis of the principles summarized by the Supreme Court in *AT&T Technologies* counsel that the question is properly for the arbitrator to decide.

While it is true that Preeminent has not consented to arbitrating matters not involving its own employees, putting forth to the arbitrator whether the officers were Preeminent employees does not force Preeminent to arbitrate a dispute to which it has not consented. The arbitrator could either determine that the officers were not Preeminent employees—in which case the

---

and whether a particular CBA provision covered the dispute at issue, *Air Line Pilots Ass'n v. Fed. Express Corp.*, 402 F.2d 1245, 1248-49 (D.C. Cir. 2005).

8

arbitration goes no further—or that the officers were Preeminent employees, after which the arbitrator would continue onto evaluating the merits of the officers' grievances. The parties do not dispute that the arbitrator should be the adjudicator of the merits of a grievance properly before him, or that a valid arbitration agreement exists between the parties. Thus, this matter is in a distinct category from the cases that Preeminent cites to support its position: *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Systems, Inc.* involved the assignment of an arbitration right to a non-party, which the court found to be valid, 484 F. Supp. 2d 64, 69-70 (D.D.C. 2006), and *Hill v. Wackenhut Services International* involved a challenge to the "very existence of a contract containing an arbitration provision." 865 F. Supp. 2d 84, 90 (D.D.C 2012). And of course, the facts in this case are different than other cases holding that the question was for the court's resolution. *See supra* Part III.B. note 1 (listing cases holding that the judiciary should determine whether parties were bound to or by an arbitration clause and whether the dispute at issue was within the scope of disputes covered by an arbitration clause). None of those circumstances is at issue here.

More similar to the facts presented by this case are instances in which arbitration was proper despite the respondent's position that the grievant was a probationary employee excluded from the application of an arbitration agreement. In *United Steel Workers of America, AFL-CIO-CLC v. Simcala, Inc.*, a district court found that "the question of whether the grievant was or was not a probationary employee serves only as a defense to the merits of the grievance" and granted a motion to submit the matter to arbitration. 111 F. Supp. 2d 1287, 1292, 1294 (M.D. Ala. 2000); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 688-89 (D.C. Cir. 2009) (reversing the district court's vacatur of an arbitration award when the parties agreed that the arbitrator could decide whether the grievance was arbitrable and he ruled that it was because

the grievant was not separated during her probationary period). Similarly, the arbitrator here, after taking in the evidence presented by both sides, could determine whether and which entity dismissed the officers.

This determination comports with the "presumption of arbitrability" and the preference to resolve doubts in favor of coverage. *See AT&T Tech.*, 475 U.S. at 650. It is certainly possible for the arbitrator to determine that the officers were, or should have been, Preeminent employees, in which case the grievance becomes a live fight. This counsels that the arbitrator should be the one to resolve this dispute. *See id.* Leaving this determination to the arbitrator is all the more appropriate because the Union and Preeminent agreed to a broad arbitration clause: "*All* disputes or differences involving the interpretation or application of this Agreement that arise between the Union and the Employer shall be resolved as provided for in this Article, except that the Employer may obtain injunctive relief from a court to enforce Article 6 [No Strikes, Picketing or Other Interruption of Work/No Lockouts]." Pet. Ex. 1 Art. 23.1(A) (emphasis added); *see also AT&T Tech.*, 475 U.S. at 650 (holding that "[s]uch a presumption [of arbitrability] is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder'"). The present issue is a difference of opinion about the application of the CBA to the two officers, and this should be determined by the parties' arbitrator.

## IV. Conclusion

For the foregoing reasons, Preeminent's motion to dismiss will be denied, and the Union's motion for summary judgment and motion to compel arbitration will be granted. A separate order will issue.

Dated: May 9, 2018

TREVOR N. MCFADDEN
United States District Judge